CITY OF ATHENS V. DAN MOODY, ATTORNEY GENERAL.

No. 4438.   Decided February 10, 1926.

(280 S. W., 514).

**1.—Cities—Approval of Bonds—Power of Taxation.**

Under Article 11, Section 4, of the Constitution as amended in 1920 and the Act of February 24, 1921 (Laws, 37th Leg., Ch. 9) passed in pursuance thereof, the limitation of the taxing power of a city of less than 5,000 population to one and one-half per cent ordinarily embraces taxation for all purposes. This includes meeting the interest and sinking fund on outstanding bonds issued by the city for construction of school buildings as well as those of an independent school district assumed by the city in taking charge of its public schools. Approval of an issuance of bonds requiring a larger taxation than so limited to meet these in addition to the new issue was properly refused by the Attorney General. (Pp. 249-255.)

**2.—Same—Case Distinguished.**

The ruling in City of Rockdale v. Cureton, 111 Texas, 136, was based on Article 925, Rev. Stats., 1911, since repealed by the Act of February, 24, 1921, Laws, 37th Leg., Ch. 9, p. 12, and is not applicable to the taxing power under the latter statute here involved. (P. 254.)

Original application to the Supreme Court by the City of Athens for writ of mandamus to require the approval by respondent Moody, as Attorney General of a proposed issue of bonds by relator.

The Supreme Court referred the application to the Commission of Appeals, Section B, for their opinion thereon, and here in accordance with such opinion refuse to grant the writ.

*Sam Holland, J. W. Young,* and *W. P. Dumas,* for relator.

The $125,000.00 School Building Bonds voted by Athens Independent School District in 1921 are not city bonds nor debts of the municipal corporation of Athens, and the tax to be levied in payment thereof is not a city tax.

City of Fort Worth v. Zane-Cetti, 278 S. W., 183; Houston v. Gonzales Independent School District, 229 S. W., 467; Constitution of Texas, Article 7, Section 3, Art. 11, Secs. 4, 7; Vernon's Sayles' Texas Civil Statutes, 1914, Vol. 2, (Articles 2857 et seq.); Acts 1921, Regular Session, Chapter 24, Sections 13, et seq.; Acts 1919, Second Called Session, Chapter 9; Reports of Attorney General of Texas, Biennial Term 1918-1920, pp. 731-734.

Bonds issued on the faith and credit of Athens Independent School District under authority of Chapter 24, Acts 1921, Regu-

lar Session, and issued subsequent to its merger with the City of Athens, and issued by the School District without authority from the city government, can not be invalidated, because—(a) They were issued pursuant to authority conferred by valid statutes upon independent school districts properly and regularly created, and are the binding obligations of a de facto school corporation. (b) The school district, being a de facto corporation *in the matter of issuing bonds,* could not defeat the validity of the bonds on the ground that it was not regularly incorporated, or for want of authority to create the debt. McQuillan on "Municipal Corporations," Sec. 2354; Dillon on "Municipal Corporations," 5 Ed. Vol. 2, Sec. 887; Young v. City of Colorado, 174 S. W., 997; City.of South Houston v. Carmon, 6 Fed. (2nd. Series). 358.

This bond issue was created by the Athens Independent School District, embracing sixteen square miles of territory prior to the assumption of the control of the schools by the City of Athens. At the time this school bond debt was created the Athens Independent School District was as separate and apart from the City of Athens as Henderson County itself—such school district having the management and control of all of its affairs through its duly qualified school officers. The governing body of the City of Athens had no more to do with the management of its affairs than the Commissioners' Court of Henderson County. This is clearly manifest by the plain provisions of the article above quoted. It provides that the city shall levy such school bond tax "upon all property subject to taxation" situated "within the limits of such corporation as extended for school purposes only, if the boundaries of the former independent school district were not the same as the boundaries of the incorporated city or town" for the purpose of paying such school bond debt. No city can legally levy, assess and collect a city tax beyond the territorial limits fixed *for city purposes only.* Chapter 17, Title 48, Revised Statutes, 1911, as amended by Chapter 169, Acts Regular Session, Thirty-fifth Legislature, means that the bonded indebtedness of the independent school district shall be assumed by the city as a municipal school district, and that in this capacity only, it may *carry on* the levy of the school district tax authorized over territory in the school district at the time the *school district bonds* issued. We submit that the opinion of Section A, Commission of Appeals, in City of Fort Worth v. Zane-Cetti sustains the position we take in this case with reference to the corporate powers of the City of Athens.

We, therefore, submit that it was never contemplated by the Legislature, in passing the Act of 1919, authorizing city control school elections, that the revenues and resources of the city proper would be absorbed by reason of the merger of the two corporations. If that is the law, then the school district can force itself upon the city—pile its outstanding debts upon the city—and thereby throttle forever the right of the city to provide for the needed municipal improvements expressly authorized by the Constitution.

City taxes and school taxes are authorized by different provisions of our Constitution; that is, Section 3, Article 7, relates to school taxes, and Sections 4 and 5, of Article 11, relate to city taxes; and the powers conferred by these constitutional provisions "are not to be confused."

*Dan Moody,* Attorney General, and *C. A. Wheeler* and *George C. Christian,* assistant, for respondent.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This is an action in mandamus, instituted in the Supreme Court by the City of Athens, a municipality having a population of less than five thousand inhabitants, against the Attorney General of this State, in which it is sought to compel the latter to officially approve an issue of refunding bonds by said city in the sum of $265,000.00. It appears from the pleadings that the Attorney General is withholding his approval because it is shown, from the record before him, that the City of Athens can not, within the constitutional tax limit of $1.50 on the $100.00 valuation of its property, take care of the interest due on the bonds already owing by said city and the refunding bonds now proposed. To be more specific, it seems to be conceded that the City of Athens can not care for the proposed bonds and its current expenses unless it be relieved, so far as its municipal tax of $1.50 on the $100.00 of valuation is concerned, of all bonds now outstanding against the City of Athens by reason of its school buildings and improvements. The total of this school bond indebtedness now outstanding is $147,000.00. Of this amount, the sum of $125,000.00 was authorized October 19, 1921 and issued November 1, 1921.

So far as the record before us, by which we must be controlled, is concerned, we must determine whether or not the maximum tax of $1.50 on the $100.00 which the City of Athens is author-

ized to levy for certain purposes must include the tax necessary for the retiring of the bonds issued for public school buildings within said city. In determining what tax a city like Athens can levy, we must look to the Constitution and statutes of our States.

In 1909 such cities were authorized, under Section 9 of Article 8 of our Constitution, to levy a tax not to exceed twenty-five cents on the $100.00 of valuation "for the erection of public buildings, streets, sewers, water works and other permanent improvements." In 1909, Section 4 of Article 11 of our Constitution read as follows:

"Cities and towns, having a population of five thousand or less, may be chartered alone by general law. They may levy, assess and collect an annual tax to defray the current expenses of their local government; but such tax shall never exceed, for any one year, one-fourth of one per cent, and shall be collectible only in current money; and all licenses and occupation taxes levied, and all fines, forfeitures, penalties and other dues accruing to cities and towns, shall be collectible only in current money."

In 1920 Section 4 aforesaid was amended by the people so as to read:

"Cities and towns having a population of five thousand or less may be chartered alone by general law. They may levy, assess and collect such taxes as may be authorized by law, but no tax for any purpose shall ever be lawful, for any one year which shall exceed one and one-half per cent. of the taxable property of such city."

The 37th Legislature, in 1921, took prompt action and passed an act putting into effect the amended Section 4 of Article 11. That was one of the expressed purposes of the Act. This Act became effective February 24, 1921, and Section 1 thereof reads as follows:

"The City Council or governing body of any city or town in this State having a population of five thousand or less shall have power by ordinance to levy, assess and collect an annual ad valorem tax sufficient to meet the interest and sinking fund on all indebtedness legally incurred prior to the adoption of the Constitutional Amendment of September 25, 1883, regarding the power of cities and towns to levy and collect taxes, etc., and may also levy, assess and collect such taxes as such City Council or governing body may determine, not to exceed for any one year one and one-half per cent of the taxable property of such city or

town, for current expenses and for the purpose of construction or the purchase of public buildings, water works, sewers, and other permanent improvements, within the limits of such city or town, and for the construction and improvement of the roads, bridges and streets of such city or town within its limits."

Section 2 refers to cities of more than five thousand inhabitants where the maximum tax rate under Section 5 of Article 11 of our Constitution is two and one-half per cent. It is not applicable here and we omit it.

Section 3 of the Act reads as follows:

"Any city or town providing for improvements mentioned in the two preceding Sections, shall have the power to issue coupon bonds therefor in such sum as it may deem expedient, to bear interest not exceeding six per cent per annum, and to mature serially or otherwise, not exceeding forty years from their date, and shall provide for payment of the interest on, and principal of bonds heretofore issued and of all bonds issued under this Act, except for indebtedness incurred prior to September 25, 1883, out of the taxes herein authorized, and the limitations now provided by law upon the amount of bonds that such cities may issue shall not apply to bonds issued under this Act. Within the meaning of this Act shall be included building sites and buildings for the public free schools and institutions of learning within such cities and towns which have assumed or may hereafter assume the exclusive control and management of the public free schools and institutions of learning within their limits, and the cities and towns hereinbefore mentioned may issue coupon bonds therefor under the terms of this Act."

Section 6 of the Act repeals all laws and parts of laws in conflict therewith and particularly and expressly repeals Article 925, as amended, of the Revised Civil Statutes of 1911. We shall hereafter refer to this particular Article. The codifiers of 1925 Revised Civil Statutes gave effect to the Act of 1921 and carried it forward and eliminated all statutes in conflict therewith, so the Act is still the law.

We think a vast change was made in the taxing power of small cities by the said amendment of 1920. This change is ably reviewed by our Supreme Court, speaking through Chief Justice Cureton, in the case of Walker v. Meyers, 114 Texas, 225, 266 S. W., 499. The amendment enlarged the taxing power very greatly. It almost trebled the former *total* taxing power of such cities. Judge Cureton said in the Meyers case, supra, that cities in making permanent improvements were no longer limited by

Section 9 of Article 8 of the Constitution and held down to twenty-five cents on the $100.00 of valuation. In that very case, the bond issue approved by the court required a thirty-cent tax on the $100.00 of valuation.

But, in authorizing such a vast increase in the taxing powers of such cities, the people left it to the Legislature to say what taxes should be authorized within the maximum limit of $1.50 on the $100.00. The Legislature has spoken on this point; as shown by the Act of 1921, which we have already quoted. We think the legislative intent is perfectly clear, as expressed in that Act alone. And, it is clear that people living within the four square miles of territory of the City Athens proper can not be taxed $1.50 on the $100.00 valuation of their property for current expenses and indebtedness exclusive of the bonds owing by the city for school buildings. The pleadings show that it requires a tax of thirty-eight cents on the one hundred dollars to take care of the $125,000.00 of school house bonds heretofore mentioned. Under the Act of 1921, people of Athens can not be taxed $1.88 on the one hundred dollars for current expenses of the city and indebtedness incurred in the erection of permanent improvements including school buildings. Of course, it would take an additional tax to take care of the $22,000.00 of school bonds for which the City of Athens was also liable. Both issues must be taken care of within the $1.50 tax rate.

In view of the wording of the Act of 1921, we do not think it necessary to look to the history of legislation in order to determine whether or not school buildings have been included by the lawmakers in the Act of 1921 as being within the tax limit of cities which have assumed control of their schools. But looking into such history, we are abundantly confirmed in our view already expressed. In 1909 was passed what became Article 925 on the Revised Statutes of 1911. It read in part as follows:

(Cities) "may levy and collect an additional twenty-five cents on the one hundred dollars valuation for the purpose of construction or the purchase of public buildings, water works, sewers, and other permanent improvements within the limits of such city or town, and shall also have power, by ordinance, to levy and collect a tax not exceeding fifteen cents on the one hundred dollars valuation of property for the construction and improvement of the roads, bridges and streets of such city or town within its limits. Within the meaning of this article shall be included building sites and buildings for the public free schools and institutions of learning within those cities and towns which

have assumed, or may assume hereafter, the exclusive control and management of the public free schools and institutions of learning within their limits."

From the quotation from the Act of 1921 already set out herein, it will be seen that the latter Act goes back to that of 1909. But, in 1917, Article 925 of the statutes of 1911 was amended so as to read:

"may levy and collect twenty-five cents on the one hundred dollar valuation of all property in such city or town for current expenses, and may levy and collect an additional twenty-five cents on the one hundred dollar valuation for the purpose of the erection and equipment or the purchase of public buildings, waterworks, sewers and other permanent improvements, *except building sites and buildings for the public free schools,* within the limits of such city or town, and shall have power, by ordinance, to levy and collect a tax not to exceed fifteen cents on the one hundred dollar valuation of property for the construction and improvement of the roads, bridges and streets of such city or town within its limits, and shall have power, by ordinance, to annually levy and collect such ad valorem tax for the support and maintenance of public free schools and for the erection and equipment of public free school buildings in the city or town, where such city or town is a separate and independent school district, as the electors of any such district may determine under the provisions of Chapter 169, Acts of the Thirty-fifth Legislature (Arts. 2876-2880, post.) Within the meaning of this Article shall be included all such separate and independent school districts that the management and control of the public free schools therein has been assumed or may hereafter be assumed by a city or town under the provisions of Chapter 17, Title 48, Revised Civil Statutes of Texas, 1911, and amendments thereto; the boundaries of such districts shall be coincident with the city or town, as incorporated, in such cities and towns as have not extended their lines for school purposes only, and in such cities and towns as have extended their lines or may hereafter extend their lines for school purposes only, under the provisions of Article 2883, Revised Civil Statutes of Texas, 1911, the boundaries of such districts shall be coincident with the boundaries of the city or town as extended for school purposes only, and all such separate and independent districts shall be classified as municipal districts."

We have underscored the words which control the Act of 1917. It was this Act which formed the basis of the decision of our

Supreme Court in the case of City of Rockdale v. Cureton, 111 Texas, 136, 229 S. W. 852. Under the Act of 1917, the Legislature expressly provided that school buildings should *not* be included in the ordinary city taxes. Therefore, the Supreme Court ruled the Rockdale bonds were governed by the power to levy taxes under school laws. The Act of 1917 expressly authorized that procedure. But, as already shown, this very Act was expressly repealed in 1921 and all related statutes omitted from the Revised Statutes of 1925.

The case of City of Rockdale v. Cureton, supra, is not authority under the situation now before us. It is not applicable here. The law has been changed. Almost immediately after that decision was rendered, the Act of 1921 came up for construction by the Attorney General upon request from the City of Van Alstyne. An opinion was prepared by an able Assistant Attorney General, construing the Act of 1921 just as we do. See Report and Opinions of the Attorney General, Vol. 7, years 1920-1922, p. 520. This construction has been followed by the Attorney General's Department since that time. We know of no authorities holding to the contrary.

The City of Athens, under Chapter 9 of the Acts of the Second Called Session of the 36th Legislature, on August 9, 1921, assumed control and management of the Athens School District. The boundaries of the city, about four square miles for general purposes, were then extended to sixteen square miles for school purposes.

The statute under which the City of Athens acted in this connection was carried forward in the Revised Statutes of 1925. When the City of Athens took this action, and it was after the taking effect of the city taxing Act of 1921 aforesaid, it became liable for the bonds of the school district then outstanding. For instance, the Act reads:

"If such independent school district shall have an outstanding bonded indebtedness, then the incorporated city or town shall become bound and liable for the payment of such bonded indebtedness."

Under that Act, the City of Athens became liable for the $22,-000.00 of school bonds outstanding when it assumed control. Of course, after assuming such control, the City itself, as a school district, issued the $125,000.00 of bonds and is liable thereon.

Having assumed control of its schools, under the statutes of our State governing such matters, the City of Athens comes within Section 3 of the Act of 1921, aforesaid, and the $1.50

maximum tax rate which cities of that size may levy must care for the school bonds. The Legislature has the right, under the amendment of 1920 aforementioned, to prescribe the purposes for which such cities may levy taxes. It has spoken and included school buildings within the city tax. Under the pleadings it seems clear that the Attorney General is justified in failing and refusing to approve the refunding bonds in the sum of $265,-000.00. For this reason, we think the writ of mandamus should not issue.

We do not wish to be understood as holding that no conditions could possibly arise under which a city like Athens would be authorized or compelled to levy a tax in excess of $1.50 on the $100.00. An interesting question might be presented should it be made to appear that the indebtedness sought to be refunded had been validly and lawfully incurred. We do not say what we would hold in such a situation. The record before us does not present any such status and we do not pass upon the rule of law which might be applicable in such an extreme case which might arise. It will be time enough to pass upon that question when it is presented.

It seems clear to us that, as presented to the Attorney General, the record in this case does not show it to be his duty to approve the bonds. On the contrary, his duty to withhold such approval seems clear to us. Therefore, we recommend that the writ of mandamus, as prayed for, be denied.

The opinion of the Commission of Appeals is adopted and mandamus refused.                    *C. M. Cureton*, Chief Justice.