

THE ATTORNEY GENERAL
OF TEXAS

GERALD C. MANN
~~JOHN BEN SHEPPERD~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

State Board of Education
Austin, Texas

Attention: Gaynor Kendall, Investment Counsel

Dear Sir:

Opinion No. O-4490

Re: Construction of the 7% debt
ratio limitation provided by
Article 2671, R.C.S., for
eligibility of bonds which may
be purchased for the Permanent
Free School Fund as applied to
the total indebtedness of cities
for municipal and school purposes.

We have your letter of March 6th requesting our opinion on the
above question, which reads:

"By Article 2669, Revised Civil Statutes of 1925, as amended
by Chapter 278, Acts of the Regular Session of the Forty-first Legis-
lature, the State Board of Education is authorized and empowered to
invest the Permanent Free School Fund of the State in bonds of 'inde-
pendent or common school districts, *** and the bonds of incorporated
cities and towns ***,' It is provided, however, by Article 2671 as
amended that 'no bonds, obligations, or pledges *** shall be so
purchased when the indebtedness of the county, city, precinct or
district issuing same, inclusive of those offered, shall exceed seven
(7%) per cent of the assessed valuation of the real estate therein.'
The State Board of Education is desirous of obtaining a construction
of the quoted limitation in connection with the following questions:

1.

"Where a city has extended its boundaries for school purposes
only, is the indebtedness for waterworks and other municipal
purposes outstanding against the city which is included within
the boundaries of the school district to be included and combined
with the debt against the school district in determining whether
the bonds of the school district thus established are eligible for
purchase under the limitation above quoted. In other words, is
the city as a municipality a separate issuing agency from the

school district created by the extension of the boundaries of the city for school purposes only?

"(a) Does any distinction obtain in this connection between cities of 5,000 population and less, operating under general laws, and home-rule cities which have assumed control of their schools?

2.

"Where a city has assumed control of its schools, and the boundaries of the district so created and those of the city are coterminous is the indebtedness for school buildings to be included and combined with the debt existing against the city for municipal purposes in determining whether bonds are eligible for purchase under the limitation above quoted. In other words, is the city a separate issuing agency from the independent school district of which it has assumed control?

"(a) Does any distinction obtain in this connection between cities of 5,000 population and less, operating under general laws, and home-rule cities which have assumed control of their schools?"

The several questions submitted by you resolve themselves to a construction of the underlined portion of Article 2671, R. C. S., 1925, as amended, quoted below, as applied to a city or town which has (under the authority of Article 11, Section 10 of the Texas Constitution) acquired the status of "a separate and independent school district" in addition to its ordinary municipal character. Such a municipality controlled "separate and independent school district" may be either coterminous with the municipal boundaries of such city (Article 2768, R. C. S., 1925; Temple Independent School District v. Procter, 97 S.W. (2d) 1047, writ of error refused) or it may extend over an area greater than that of the municipality proper (Article 2803, R. C. S., 1925; Boesch v. Byrom, 83 S.W. 18; Snyder v. Baird Independent School District, 102 Tex. 4, 111 S.W. 723).

Article 2671, as last amended by Acts 1939, 46th Legislature, page 276, reads:

"The Comptroller of State Board shall carefully examine the bonds, obligations, or pledges so offered and investigate the facts tending to show the validity thereof; and such Board may decline to purchase same unless satisfied that they are a safe and proper investment for such fund. No bonds, obligations, or pledges shall be so purchased that bear less than two and one-half (2½%) per cent interest. No bonds, obligations, or pledges except those of the United States, the State of Texas, and the University of Texas, shall be so purchased when the indebtedness of the county, city, precinct or district issuing same,

<u>inclusive of those so offered, shall exceed seven (7%) per
cent of the assessed value of the real estate therein.</u> If
default be made in the payment of interest due upon such bonds,
obligations, or pledges, the State Board of Education may at
any time prior to the payment of such overdue interest elect
to treat the principal as due, and the same shall thereupon,
at the option of said Board, become due and payable; and
payment of both such principal and interest shall in all cases
be enforced in the manner provided by law, and the right to
enforce such collection shall never be barred by any law or
limitation whatever."

The wording of the above provision has been changed to some
extent since its original enactment in 1905 in the course of three
amendments and two codifications (1909, 1911, 1925, 1929, and 1939),
but except for changes to make eligible the bonds of additional govern-
mental agencies, the apparent purpose of the underlined portion of
Article 2671 as quoted above is no different from what it was as origi-
nally enacted in Section 4 of S.B. 218, Chapter 124, page 263, Acts 1905,
Regular Session, 29th Legislature, reading:

". . . and no county bonds or bonds of any incorporated
city or independent school district shall be purchased as an
investment for the permanent public free school fund when the
indebtedness of such county, incorporated city or independent
school district, inclusive of the bonds so offered, shall exceed
seven per cent of the assessed value of the real estate in such
county or incorporated city or independent school district, . . ."

It is to be noted that the eligibility of bonds for purchase by
the permanent public free school fund (as defined in the original enact-
ment in 1905 and in all subsequent amendments thereto including Article
2671, R.C.S., 1925, as now constituted) does not require that the real
estate within the political subdivision constituting the issuing agency
shall not be encumbered beyond 7% of its assessed value for <u>all</u> public
debts; but it requires only that the debt ratio of the particular political
subdivision whose bonds are considered for purchase be not in excess of
7% of the assessed value of the real estate within that particular sub-
division. For example, the real estate within a particular
independent school district may be encumbered by the bond issues of the
county, a road district and a drainage district embracing or overlapping
this same real estate, constituting a total indebtedness far in excess of
7% of its assessed value, and yet the bonds of the independent school
district would still be eligible so long as the school district indebted-
ness (considered independently of the indebtedness of other overlapping
political subdivisions) did not exceed 7% of the assessed valuation of
the school district. Our problem, therefore, is to determine whether the
independent school district created when a city assumes control of the
schools within its limits (under the authority of Article 11, Section 10
of the Constitution) is in fact an independent school district and a

separate political entity as distinguished from the municipality which has assumed control thereof. If such a school district constitutes a "district" as distinguished from a "city," as those words are found in Article 2671, then the indebtedness of the city for municipal purposes is not to be lumped with the indebtedness of the city in its capacity as an independent school district in applying the 7% debt ratio requirement. It may be helpful to ascertain the legislative intent with respect to the 7% debt ratio limitation by referring to the enactment wherein this requirement first appeared. This was S.B. 218, Chapter 124, page 263, Acts 1905, Regular Session, 29th Legislature, which act was a comprehensive statute providing for a complete system of public free schools in Texas. Let us examine said Act to see whether the Legislature regarded the school system of a city which had assumed control of its schools as an integral part of the municipality or whether it treated the school so controlled as a separate and independent school district.

In other parts of this Act the Legislature made detailed provision for the creation and operation of schools under the control of cities and towns, and these provisions tend to indicate that the Legislature regarded such municipal school districts as separate and distinct entities, apart from the municipal functions of the cities under whose control they were placed.

For example, Section 136 of the Act provided that in cities and towns which had assumed control of the schools within their limits, "such exclusive control and management . . . shall be in a board of trustees," and the title to all school property shall be vested in such board, and ". . . such board of trustees shall constitute a body corporate. . ."

Section 137 provided that the pro rata part of the available school fund and all taxes levied for school purposes shall be paid "directly to the Treasurer of the board of trustees . . . and the mayor and council or board of alderman of such city or town shall have no power or control of such funds."

Of special significance in this respect is Section 144 of the Act which reads:

"Schools thus organized and provided for by incorporated cities and towns shall be subject to the general laws, so far as the same are applicable; but each city or town having control of schools within its limits shall constitute a separate school district and may provide for the organization of schools and the appropriation of its school funds in such manner as may be best suited to its population and condition." (Emphasis ours) (Said section 144 is the legislatuve ancestor of Article 2768, R.C.S., 1925).

Section 148 provided for the extension of the corporate limits of such city or towns "for school purposes only," and stated that "the added territory shall not affect the city debts or business relations in any manner whatsoever, except for school purposes as provided above."

It seems to us, that the provisions above referred to in the 1905 enactment which contained for the first time the 7% debt limitation upon bonds which are to be purchased by the permanent public free school fund, clearly indicates that the Legislature regarded the school system of a city or town which had assumed control of its schools as an independent school district and a separate and distinct governmental entity from the municipal corporation proper; so that in applying the 7% debt ratio provision to such a city due regard must be given to its dual character to the end that the 7% provisions should be applied separately to each of the governmental entities and not to the city and the school district taken together.

While the precise question with reference to the construction of the 7% debt limitation has never been before the appellate courts of Texas, our courts have consistently recognized the dual entities of cities and school districts which have been authorized under Article 11, Section 10 of our Constitution, and in every instance the court has given effect to the separate entities involved.

Thus in Love v. City of Dallas, 120 Tex. 351, 40 S.W. (2d) 20, Chief Justice Cureton declared, at page 356:

"The City of Dallas is a municipal corporation, chartered under the laws of the state, has assumed control of its public schools, and as such is to be regarded as an independent school district."

In dealing with schools which are under the control and management of cities the courts have consistently held that the rate of tax which may be levied for school purposes in such cities is limited by Article 7, Section 3 of the Constitution of Texas which relates to schools and is not controlled by Article 8, Section 9 of the Constitution, which limits the tax rate of counties, cities and towns. In other words, in this respect, the courts have treated schools under the management and control of cities as school districts rather than as a part of the cities under whose control the schools are operated.

The first of these cases is Houston v. Gonzales Independent School District, decided by the Commission of Appeals in 1921, 229 S.W. 467. The City of Gonzales, while exercising control of its schools had issued bonds for the erection of school buildings which required a tax levy of 17¢. Thereafter, the Legislature, by special Act, divested the City of Gonzales of control of its schools and created the Gonzales

attempted to levy a 40¢ tax on the property of the entire district. The Court held that the new tax was valid only to the extent of 33¢ because at that time, Article 7, Section 3 of our Constitution limited taxes for school purposes to 50¢ so that the school district could levy only 33¢ in addition to the 17¢ previously levied by the City of Gonzales while in control of its schools. The court held that the 17¢ tax originally levied by the city for school purposes was a school tax authorized and limited by Article 7, Section 3 of the Constitution, and not a city tax limited by Article 8, Section 9 (which limits counties, cities and towns to 25¢ "for the errection of public buildings, sewers, waterworks and other improvements"). Spencer, J., speaking for the court at page 468, said:

> "The beneficial title to the property of the Gonzales School district as originally formed was in the people thereof - the mayor merely holding the same in trust for the sole use of the schools - and the Legislature could, without any wise disturbing such title, change the trustees, as was done by the special act."

And at page 469:

> "The bonded indebtedness being for school purposes, the 17¢ tax levy necessary to pay the interest thereon and provide a sinking fund, to retire same at maturity, is a limitation upon the taxing power of the district, but not a limitation upon the city of Gonzales for building purposes."

The leading case announcing the doctrine of the dual nature of a city which has assumed control of its schools is City of Rockdale v. Cureton, decided by the Texas Supreme Court in 1921, 111 Tex. 136, 229 S.W. 852. We quote from the court's statement of the facts in this case:

> "Prior to 1918, the city of Rockdale, incorporated under the general laws, had assumed the control of its public schools. The effect of this action was to constitute it, for school purposes, an independent school district. Article 2871.

> "It had never extended its city boundaries for school purposes."

This was an action to compel the Attorney General by mandamus to approve a $75,000 bond issue which he had refused to approve for the reason that the tax necessary to pay the same would exceed the city's 25¢ tax limit for improvements, imposed by Article 8, Section 9 of the Constitution. The court granted the mandamus for the reason that the tax of such a city for school purposes is not limited by Article 8, Section 9, but by Article 7, Section 3 of the Constitution. We quote from the opinion of Chief Justice Phillips:

"The Constitution (Section 10 of Article 11) has empowered the Legislature to constitute any town or city an independent school district. The Legislature, therefore, had the power to say as it has done in Article 2871, that a city or town taking over control of its public schools shall constitute such a district. There may thus be conferred upon a city a dual character, and with such character, dual powers. There could have been no purpose in authorizing the creation of towns and cities as independent school districts - a recognized separate class of municipal corporations with individual powers, unless in that capacity they were to have the powers of such districts.

"The city of Rockdale had lawfully acquired this dual character. It had powers strictly as a municipality, to be exercised for strictly municipal purposes; and it had its powers as a duly constituted independent school district. The two are not to be confused."

In M. K. & T. R. R. Co. of Texas v. City of Whitesboro, (1926) 287 S. W. 904, the Texas Commission of Appeals again declared that the tax rate for cities which have assumed control of their schools is controlled by Article 7, Section 3 of the Constitution both before and after such city may have extended its limits for school purposes only. Bishop, J., at page 906, said:

"The municipal corporation and the independent school district are distinct, though they are both under the control of the same officers."

It may appear that City of Athens v. Moody, (1926) 115 Tex. 247, 280 S.W. 514, by the Commission of Appeals, is in conflict with the doctrine announced by the preceding cases which recognize the dual nature of cities which have assumed control of their schools. A careful analysis of this case, however, indicates that it does not disavow the dual nature of cities having control of their schools, but merely recognizes the $1.50 limitation on the tax rate of cities having a population of less than 5,000 for both school and municipal purposes, pursuant to the express language of the statute there under consideration (Section 3 of Chapter 9, Acts 1921, 37th Legislature, which is now codified as Article 1027, R.C.S., 1925).

Again we find the courts declaring that those eligible to vote on an increase in taxes for school purposes in cities which have assumed control of their schools is to be governed by Article 7, Section 3 of the Constitution relating to school districts rather than to the provisions relating to cities.

In City of Fort Worth v. Zane-Cetti (1925), 278 S.W. 183, the Texas Commission of Appeals held that an election to increase the tax rate for school purposes in Fort Worth (which has assumed control of its schools) must be by the "qualified property tax paying voters" as provided by Article 7, Section 3 of the Constitution, instead of by the "qualified voters" as provided by Fort Worth's home-rule charter. Said Nichols, J., at page 184:

> "The source of the legislative power to create, or define an independent school district is to be found in Section 3, Article 7 of the Constitution. Such a district is a municipal corporation, sui generis. City of Rockdale v. Cureton, Attorney General, 111 Tex. 136, 229 S.W. 852. The territory of a city and the territory of a district may be exactly coincident, and for the distinctive purposes, separate governments may be provided to operate separately, but harmoniously, within the common orbit. Simmons v. Lightfoot, Attorney General, 105 Tex. 212, 215, 146 S.W. 871; Munson v. Looney, Attorney General, 107 Tex. 263, 268, 172 S.W. 1102, 177 S.W. 1193. Or, in virtue of the terms of Section 10, Article 11, of the Constitution, and for the convenient administrative purposes, 'the Legislature may constitute any city or town a separate and independent school district.' Such a combination of the two municipal corporations, each sui generis, does not take from either its distinctive features."

In Treaccar v. City of Galveston, (Galveston Court of Civil Appeals, 1930, writ of error refused) 28 S.W. (2d) 887, the court held that an additional school tax in the City of Galveston was valid when based upon a vote of "a majority of the qualified tax paying voters of the district voting at an election" as provided by Article 7, Section 3 of the Constitution, even though this election did not satisfy the requirement of Article 11, Section 10 of the Constitution, that "two-thirds of the tax payers of such city or town shall vote for such tax," thereby further indicating that city-controlled schools are treated for election purposes as "school districts" rather than as "cities." We quote from the opinion of Pleasants, C. J., at page 891:

> "The City of Galveston is one of the school districts of the State, created as such in the manner provided by our Constitution and legislative acts, and in its capacity as a school district it cannot be denied the rights and privileges given by the Constitution to all other school districts in the state. It cannot be held that because it is an incorporated city having a special municipal charter that its constitutional powers as a free school district of the State are in any way lessened or restricted. We think this question is settled by the opinion of our Supreme Court in the case of Rockdale v. Cureton, 111 Tex. 136, 229 S.W. 852."

We wish to cite only a few additional cases which further indicate that city-controlled schools are to be treated as independent school districts rather than as integral parts of the cities.

In City of Fort Worth v. Cureton, (1920) 110 Tex. 590, 222 S.W. 531, the Supreme Court construed the charter of the city of Fort Worth which limited the tax rate for all purposes to $1.75 "inclusive of the school tax that may be levied by the board of trustees of public schools as provided by this Act" so as to authorize an increase in the combined tax rate when the tax rate for school purposes only was increased by charter amendment. The court alluded to the dual character of a city which has control of its schools and declared that the charter should not be construed so as to reduce the authorized tax rate for general municipal purposes in the event of an increase in the rate for school purposes only.

In City of Belton v. Harris Trust & Savings Bank, 273 S.W. 914, (affirmed by the Texas Commission of Appeals, 283 S.W. 164) the Austin Court of Civil Appeals held that a charter provision authorizing a $1.50 tax rate without stating its purpose, had reference to taxation for general municipal purposes under the home-rule amendment, and had no relation whatever to the city's taxing power as an independent school district.

The Austin Court of Civil Appeals, in Temple Independent School District v. Procter, (1936) 97 S.W. (2d) 1047, (writ of error refused), held that the validity of a contract between the Superintendent of Schools in Temple and the school board (which was appointed by the city council; Temple having assumed control of its schools) was to be governed not by the city charter but by the statutes relating to school affairs. In this case Judge Baugh declared, at page 1053:

> "It is now settled, however, that, where such city does assume control of its schools, such control so far as the schools are concerned, does not become merged into and become a part of the municipal government as such. And where the city commissioners or city council retains control of its public schools it acts in a dual capacity - one as a governing body of the city in its status as a municipality, and the other as the controlling or governing board of its schools. The two capacities are not to be confused. City of Rockdale v. Cureton, 111 Tex. 136,139, 229 S.W. 852; City of Fort Worth v. Zane-Cetti, (Tex. Comm. App.) 278 S.W. 183. Insofar as it acts in its strictly municipal governmental capacity, its powers are referable to Article 11 of the Constitution and title 28 of the R. S. (Article 961, et seq., as amended (Vernon's Annotated Civil Statutes, Article 961, et seq.)). Whereas, in the management and control of its schools, its powers are referable to Article 7 of the Constitution and Title 49 of the R. S. (Article 2584, et seq., as amended (Vernon's Annotated Civil Statutes, Article 2584, et seq.))."

The separate and distinct character of a city school district and the city under whose control it is operated is most forcefully illustrated by the case of City of El Paso v. Carroll by the El Paso Court of Civil Appeals, (1937) 108 S.W. (2d) 251, (writ of error refused) wherein it was held that the City of El Paso was not authorized to take $54,000 out of the general fund for municipal purposes and loan this money to the school district which was under the control of the city, for the reason that the school district so constituted and the city were two separate governmental entities and their respective finances should be kept distinct and separate.

Based upon a statutory construction of Article 2671 by looking to other sections of the Act of 1905 whereby the 7% debt ratio limitation was first enacted, and based upon the unbroken line of authority of the Texas courts holding that the municipal functions of a city must at all times be kept separate and apart from the school district of which it has assumed control, it is our opinion that in construing Article 2671 we should give effect to this separate character of the two governmental entities. We believe, therefore, that if the debt ratio of a city, independent of the indebtedness which may have been created for school purposes, is below 7%, then the bonds of such city are eligible for purchase by the permanent free school fund; and likewise, that if the indebtedness of a city for school purposes only, is less than 7% of the assessed valuation of the real property therein, independent of the debts of the city for municipal purposes, then in such event, the bonds of the city issued for school purposes only are eligible for investment in the permanent free school fund. We believe no distinction exists insofar as the construction of this statute is concerned between cities having a population greater or less than 5,000. Nor do we believe that any distinction is to be drawn in this respect between those cities which have extended their boundaries for school purposes only, and those cities whose boundaries for school and municipal purposes are coterminous. In all such cases it is our opinion that the city as a municipality is a separate issuing agency from the school district under the control of such city and the bonded indebtedness of each should be looked to independently of the combined bonded indebtedness of the two governmental units in applying the 7% debt ratio limitation of Article 2671.

APPROVED APR. 28, 1942

/s/ Grover Sellers

FIRST ASSISTANT
ATTORNEY GENERAL

WRK:db-ds

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Walter R. Koch
Walter R. Koch
Assistant

APPROVED OPINION COMMITTEE BY  /s/ B.W.B.  CHAIRMAN