

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 8, 1947

Honorable L. A. Woods,
State Superintendent of Public Instruction,
Austin, Texas

Attention: Hon. T. M. Trimble, First Assistant

Opinion No. V-334

Re: Issuance of bonds and
levy of taxes by Dallas
Independent School Dis-
trict.

Dear Mr. Woods:

In your letter of August 1, 1947, you state
that the City Council of the City of Dallas on November
14, 1945, called an election to be held on December 8,
1945, on the question whether bonds in the principal a-
mount of ten million dollars should be issued for school
purposes. The election was duly and regularly held, and
a majority vote was cast in favor of the proposition.
On July 29, 1947, an election was held under the author-
ity of Senate Bill No. 364, Acts Fiftieth Legislature,
which resulted in the separation of the school system
from the City of Dallas, and the district is now known
as the Dallas Independent School District. Prior to the
separation election, the city issued two hundred thousand
dollars of the authorized ten million dollars, and in
connection with the un-issued balance you ask our opin-
ion upon the following question:

"The question concerning the fore-
going is whether or not the said ten mil-
lion dollar bond issue, heretofore voted,
can now be issued and a tax in payment
thereof levied by the Board of Trustees
of the Dallas Independent School District
without further submitting same to a vote
of the qualified electors? "

The ordinance of November 14, 1945, to which
you refer called an election on separate propositions

covering seventeen issues of bonds.  The school bond is-
sue was Proposition No. 1.  In connection with bonds
that have been issued, this department has heretofore
examined all the proceedings relating to this election.
We have re-examined these proceedings in connection with
this opinion request, and you are advised that it is our
opinion that the authority to issue the balance of the
ten million dollar issue ceased with the separation of
the school district from municipal control.  In this con-
nection, we wish to state that we have not been furnish-
ed copies of the separation election proceedings, and
we express no opinion regarding whether the election was
duly called and held.  For the purposes of this opinion,
we will assume that the election was in all things prop-
er.  We have been advised that the reason we have not
been furnished copies of such proceedings is that the
compilation of the same would necessarily take time, and
that as the fall semester will open in shortly over a
month, decisions must be reached prior to that time; we
have also been advised that our rendering this opinion,
based upon the above-mentioned assumption, meets with
the approval of the board of trustees of the district.

Prior to the election on July 29, 1947, the
district was a municipally controlled school district.
Keeping this fact in mind, let us examine the proceed-
ings relating to the voting of the bonds.  The ordinance
of November 14, 1945 (No. 3722) provided in its caption
that the election was to be "participated in by the qual-
ified voters of the City of Dallas coming within the pro-
visions of Article 6, Section 3-A of the Texas Constitu-
tion for the purpose of determining upon the issuance of
coupon bonds in the respective amounts set out herein
and for the purposes particularly set forth . . ." (Em-
phasis added).  Section 2 provided that "there shall be
submitted to the qualified voters of the City of Dallas
who are qualified voters of the City of Dallas coming
within the provisions of Article 6, Section 3-A of the
Texas Constitution, the question of the issuance of var-
ious vonds as follows . . ." (Emphasis added.  Then fol-
lows description of the seventeen proposed bond issues).
Section 3 provided that in the event the bonds were
authorized, "the City Council of the City shall at the
time of issuance and sale of said bonds provide for a
levy of a tax sufficient . . ."

Section 4 provided as follows:

"That the bonds herein submitted,
if authorized, shall be issued in the
denomination of $1,000.00 each and pay-
able in not more than forty (40) years
after date, or if authorized and ordered
issued, the City Council shall have the
power to issue same serially as in their
discretion may be deemed best and pro-
vide for maturities thereof at any time
not to exceed forty (40) years.  Said
bonds shall bear interest not to exceed
the rate of 5% per annum which shall be
payable semi-annually as it accrues at
such place as may be designated by the
City Council of the City of Dallas, and
said bonds shall be issued and executed
in accordance with the terms of the City
Charter of the City of Dallas with ref-
erence to the issuance of bonds, and the
general laws of the State of Texas appli-
cable thereto.  That the bonds here sub-
mitted shall, when authorized, be issued
in accordance with the applicable terms
of the City Charter of the City of Dallas
and the State law."

Section 5 provided for the official ballot
in the following form:

"For:　　　The proposition of the issu-
　　　　　ance of $10,000,000.00 in
　　　　　coupon bonds of the City of
　　　　　Dallas for the purpose of
　　　　　obtaining money for public
　　　　　school improvements . . .

"Against:　The proposition . . . (same
　　　　　as above) . . ."

Section 7 provided that, in the event the
bonds were authorized at the election, "the City Council
of the City of Dallas may issue for sale any portion of
said amount . . ."  Section 8 provided that "the manner
of holding said election and making the returns shall be
in accordance with the ordinances and the charter of the
City of Dallas relative thereto and the general laws of
the State of Texas applicable to the holding of such an
election . . ."

On July 26, 1946, the City Council of the City of Dallas enacted Ordinance No. 3870 which authorized the issuance of bonds in the amount of two hundred thousand dollars (part of the ten million dollars of bonds authorized at the election on December 8, 1945). That ordinance in its caption provided "for the issuance and sale of Two Hundred Thousand ($200,000) Dollars in negotiable coupon bonds of the City of Dallas heretofore authorized . . ." The first preamble clause of the ordinance provided in part as follows:

> "WHEREAS, in accordance with the charter of the City of Dallas and the applicable State Statutes, and in accordance with an ordinance passed by the governing body of the City of Dallas on the 14th day of November, A. D. 1945 . . . a proposition to issue Ten Million ($10,000,000.00) Dollars in bonds of the City of Dallas . . ."

Section 1 of the ordinance provided that "there be and is hereby ordered issued negotiable coupon bonds of the City of Dallas . . ." The printed bonds which were issued in accordance with the ordinance and which were approved by the Attorney General were called "City of Dallas School Improvement Bonds."

We have gone to great length in setting out excerpts from the ordinances enacted by the City Council of the City of Dallas in an effort to show how the bonds were authorized and issued. We would like to add, at this point, that the ordinances were enacted and the election was held in accordance with the city charter and with the provisions of Title 22 of the Revised Civil Statutes of Texas, as amended, which governs the issuance of bonds by a county or an incorporated city or town.

Can it be said as a matter of law that the qualified voters at the election held on December 8, 1945, authorized the Board of Trustees of the Dallas Independent School District, as it now exists, by virtue of the separation election held seventeen months after the bond election, to issue the bonds in question? We think that the answer is in the negative. It is our opinion that the proceedings clearly show that the voters authorized the City of Dallas (as a municipally controlled independent school district) and only that

entity to issue the bonds.  In a municipally controlled
district, the City Council issues bonds and levies taxes.
Poteet v. Bridges, 248 S. W. 415.  The voters may have
exercised a different choice if they had known that the
bonds would be issued by a board of trustees of an inde-
pendent district instead of the City Council of the City
of Dallas.

Senate Bill No. 364 does not provide that
the successor district may issue the balance of these
bonds; therefore, we do not have to determine whether
this power lies within the legislative prerogative. Sec-
tion 9 of the bill provides as follows:

"All bonds issued by and outstand-
ing against any such city or town, as a
school district, and all obligations,
contracts and indebtedness existing a-
gainst the city or town, as a school dis-
trict, shall become the obligations and
debts of the independent school district
at the time of its separation from muni-
cipal control, and the said independent
school district, after separation from
municipal control, shall be held to have
assumed the discharge of all such obli-
gations, contracts and indebtedness, and
the same shall be enforceable and collect-
ible from, paid off and discharged by,
the said independent school district, as
if originally created by it as a separate
and independent school district; and it
shall not be necessary to call an elec-
tion within and for such district for
the purpose of assuming such bonds and
other indebtedness."

It will be noted that this section applies
to bonds which have been "issued by" and are "outstand-
ing against any such city or town, as a school district."
It is evident that of the ten million dollars only two
hundred thousand dollars of the bonds were issued and
are outstanding.

It is well settled that the power to issue
negotiable bonds may be exercised only in the mode of
the granted power and for the purposes specified in the
grant.  Keel v. Pulte (Com. App.), 10 S. W. (2) 694. It
is our opinion that the qualified property taxpaying

voters did not grant the Board of Trustees of the presently existing Dallas Independent School District the power to issue the bonds. This power was granted only to the City of Dallas as a municipally controlled school district, and not to its corporate successor. It is our opinion that the fact that the City of Dallas had extended its boundaries for school purposes does not alter what we have said. Poteet v. Bridges, supra.

To support the view that we have taken, we call your attention to the provisions of Section 208 of the City Charter wherein the tax rate is limited to $2.50 on each $100.00 valuation, "and which said tax shall embrace all taxes for municipal purposes, inclusive of school taxes . . ." Can it be said that the qualified property taxpaying voters would have authorized these bonds if they had known that the tax rate on their property would not be limited to $2.50 for all purposes, but that it could be increased to $3.75 ($2.50 plus $1.25 authorized by Section 5 of Senate Bill No. 364)? It is our opinion that the question should be answered in the negative. Opinion No. 6059; City of Athens v. Moody, 280 S. W. 514.

We call your attention further to the fact that the bonds were voted under the provisions of Title 22, Revised Civil Statutes of Texas, as amended. These statutes (Article 701, et seq.) do not govern the issuance of bonds by an independent school district. Love v. Rockwall Independent School District, 238 S.W. 642. The Dallas Independent School District is no longer a municipally controlled district, but is an independent school district subject to the provisions of Senate Bill No. 364 and the general laws relative to independent school districts. In the issuance of bonds, therefore, Articles 2784e, et seq., Vernon's Civil Statutes, would control (not Articles 701, et seq.). Article 2785 requires a petition as a predicate to the calling of a bond election. It requires a different notice than that outlined in Article 704. Article 2786 requires that "the petition, election order and notice of election must distinctly specify the amount of bonds, the rate of interest, their maturity dates, and the purpose for which the bonds are to be used. (Emphasis added). It requires a differently worded ballot. It requires that the bonds shall mature in serial annual installments over a period of not exceeding forty years from their date, but that when the schoolhouses are to be constructed of wood, the bonds shall mature in not more than twenty years.

An independent district in issuing bonds must meet the terms of these statutes. It is obvious that in the issuance of the balance of the $10,000,-000 bonds, these terms could not be met. It is our opinion that this fact alone would preclude the issuance of such bonds.

In view of the foregoing, you are advised that the Board of Trustees of the Dallas Independent School District is without authority to issue the balance of such bonds.

You are interested in a second question, and this question concerns the tax of the new district under Section 5 of Senate Bill No. 364. We quote the following from your letter:

"Prior to the said separation election, a tax in the amount of seventy-five cents was voted and levied for maintenance of said school system, which, together with an approximate eleven cent bond retirement tax theretofore voted and levied, makes the total tax now levied for said school district amount to approximately eighty-six cents on the one-hundred dollars valuation.

"Now, can the Board of Trustees of the Dallas Independent School District levy an additional tax, which when added to the existing taxes does not exceed one dollar and twenty-five cents on the one hundred dollars valuation of taxable property of said district, for the maintenance of the schools therein, without a vote of the tax paying property owners therein under Senate Bill 364?"

Section 5 of Senate Bill No. 364 reads as follows:

"Except as herein denied or limited, all the powers conferred upon independent school districts and/or towns and villages incorporated for free school purposes only, by Title 49, of the Revised Civil Statutes of Texas, of 1925, and amendments thereto, including the right to annex

contiguous territory for school pur-
poses, and the right to levy taxes
and issue bonds for school purposes,
as provided by General Law, hereby
are conferred upon any independent
school district separated from muni-
cipal control under the provisions
of this Act; provided however, that
the trustees of any independent
school district that may hereafter
be separated from municipal control
under the provisions of this Act,
shall have the power to levy and col-
lect an annual ad valorem tax not to
exceed One and 25/100 ($1.25) Dol-
lars on the One Hundred ($100.00)
Dollars valuation of taxable proper-
ty of the district, for the mainten-
ance of the schools therein, and
which may be used to pay the princi-
pal and interest on all bonds issued
for school building purposes out-
standing against the extended muni-
cipal school district at the time of
separation from municipal control,
and the principal of and interest on
all bonds to be issued hereafter by
any such independent school district;
provided that nothing herein shall be
construed as abrogating or in any man-
ner repealing or affecting any main-
tenance tax and/or bond taxes hereto-
fore voted, authorized and/or levied
on taxable properties situated within
the limits of the extended municipal
school district; provided further,
that no increase in the maximum rate
of school maintenance tax and/or bond
debt of any such district shall be
authorized until after an election
shall have been held wherein a major-
ity of the taxpaying voters, voting
at said election, shall have voted in
favor of said tax, or the issuance of
said bonds, or both, as the case may
be; and provided further, that the
bonds of any such district shall not
exceed in amount seven (7%) per cent-
um of the assessed value of taxable

property of such district, as shown by the last annual assessment of such property. In the event an election is held for the purpose of separating such school district from municipal control, and such election is in favor of the separation of the public schools from municipal control, then such independent school district may levy and collect taxes as of January 1st, of the year in which the election was held, and thereafter levy and collect such taxes on an annual basis."

You wish to know whether this tax of $1.25 can be levied without a vote of the qualified property taxpaying voters of the district. Section 3 of Article VII, Constitution of Texas, provides in part:

" . . . provided that a majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such tax . . ."

This Constitutional mandate must be complied with. Pyote Independent School District v. Dyer (Com. App.), 34 S. W. (2) 578; Bigfoot Independent School District v. Genard (Civ. App.), 116 S. W. (2) 804, (Aff'd., Com. App.) 129 S. W. (2) 1213; Crabb v. Celeste Independent School District, 105 Tex. 194, 146 S. W. 528, 39 L.R.A. (NS) 601; Burns v. Dilly Independent School District (Com. App.), 295 S. W. 1091.

You are, therefore, advised that the Board of Trustees of the Dallas Independent School District has no authority to levy a tax of $1.25 unless a "majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such tax . . ."

It has been held that an election whereby the school system is separated from municipal control is an amendment to the charter of the city. State v. City Commissioner of San Angelo (W. E. Ref.), 101 S.W. (2) 360. It is assumed that the charter of the City of Dallas had not been amended within the two years preceding the election held on July 29, 1947.

## SUMMARY

1.   The Board of Trustees of the Dallas Independent School District, which district has been separated from municipal control is without authority to issue the balance of the ten million dollars of bonds authorized at an election held on December 8, 1945, when the district was a municipally controlled district.

2.   The Board of Trustees of the Dallas Independent School District is without authority to levy a tax of $1.25 unless "a majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose shall vote such tax."

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _George W. Sparks_

George W. Sparks
Assistant

GWS-s:wb

APPROVED:

_Price Daniel_

ATTORNEY GENERAL