

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 9, 1957

Hon. Leroy Jeffers, Chairman
The Board of Regents
University of Texas
Esperson Building
Houston 2, Texas

Hon. M. T. Harrington, Chancellor
Texas A. & M. College Systam
College Station, Texas

Gentlemen:

Opinion No. WW-121

Re: Interpretation of Sec-
tions 17 and 18 of Art.
VII of the Constitution
of Texas as they relate
to the authority of the
Board of Directors of the
Agricultural and Mechani-
cal College of Texas to
issue bonds or notes
thereunder prior and sub-
sequent to their repeal
as of January 1, 1958.

Your request for an opinion presents the following questions:

1. Are the Board of Directors of the
Agricultural and Mechanical College of Texas
and the Board of Regents of the University
of Texas authorized to issue bonds or notes
pursuant to Section 17 of Article VII of the
Constitution of Texas on behalf of Prairie
View Agricultural and Mechanical College of
Texas, Tarleton State College and Arlington
State College for purposes described therein
payable after January 1, 1958 from proceeds
of taxes levied by said Section of the Con-
stitution during or before the calendar year
1957?

2. If the answer to the first question
is in the negative, will the Board be author-
ized to issue on behalf of such institutions
bonds or notes after January, 1958, pursuant
to Section 18 of Article VII of the Constitu-
tion for purposes described therein and use
for payment of the principal of and the inter-
est on such bonds or notes the proceeds of
taxes levied by Section 17 of Article VII of
the Constitution during or before the calendar
year 1957?

Article VII, Section 17, of the Constitution of Texas (ratified by the electorate in 1947) authorized the issuance of bonds or notes by designated State institutions of higher learning to acquire, construct and initially equip buildings or other permanent improvements. The obligations to be issued are to be secured by a pledge of the State ad valorem tax of 5¢ per one hundred dollars' valuation as apportioned to the various institutions. The Constitution states that the tax is to be levied for thirty years; requires that this time shall be divided into three ten-year periods; and prohibits the pledge of the tax proceeds to the payment of obligations except within the ten-year period in which such bonds are issued. The first ten-year period comes to a close on December 31, 1957.

In November of 1956, this constitutional provision was amended, with the provision that the amendment is to "become operative or effective so as to supersede or repeal the former provisions . . . on January 1, 1958", which is the beginning of the second ten-year period originally prescribed.

The two constitutional provisions (adopted in 1947 and 1956) are substantially the same, except as to the institutions who are eligible recipients of the proceeds of the ad valorem tax. Four schools are eliminated from participation in the proceeds of the future tax levies by the amendment which is to become operative on January 1, 1958, namely: Prairie View Agricultural and Mechanical College at Prairie View, Tarleton State College at Stephenville, Arlington State College at Arlington and Texas Western College of the University of Texas at El Paso.

Simultaneously with this change in Article VII, Section 17, of the Constitution, these four institutions, as a part of the Texas Agricultural and Mechanical College and the University of Texas, were given the authority to issue bonds secured solely by a pledge of the revenues of the Permanent University Fund by the change in the provisions of Article VII, Section 18, of the Constitution.

Your first question is whether these four institutions may, after January 1, 1958, issue bonds or notes under the provisions of Article VII, Section 17, of the Constitution, and provide that such obligations will be payable from taxes levied during the years 1948-1957 which are not collected until after January 31, 1957.

Your first question is answered in the negative for the following reasons:

(1)   On January 1, 1958, there will be no authority, under Article VII, Section 17, as amended, for these particular institutions to issue obligations of any type.  It is fundamental that the power to issue negotiable bonds or notes must be implicit and express.

(2)   If operation under the 1947 amendment were permitted, the obligations -- by constitutional requirement -- would mature not later than December 31, 1957, which date would be prior to the date of their proposed issuance.  Attorney General Opinion MS-176 (1955).

Your second question is whether these institutions, after January 1, 1958, may issue bonds or notes under the provisions of Article VII, Section 18, of the Constitution, and use the money received after December 31, 1957, from taxes levied during the years 1948-57, inclusive, to pay such obligations.

The stating of your question assumes that the four institutions will be entitled to receive a portion of the money collected after December 31, 1957, from the levies made under the 1947 amendment which added Article VII, Section 17, to our Constitution in its present form.

Two prior opinions of this office, MS-176 (1955) and MS-221 (1955), considered the constitutional provision wherein it states:

> "Funds raised from said Five (5¢) Cents tax
> levy for the ten-year period beginning January 1, 1948, are hereby allocated to the following institutions . . . and in the following proportions . . ."

Those prior opinions take the view that the Constitution itself, by the employment of the above language, makes the allocation for the first ten-year prior.  We adhere to this view.

The provision which becomes effective and operative on January 1, 1958, reads, in part:

> "Nor shall the provisions of this amendment
> affect in any way the prior allocation of the
> revenue for the ten-year period beginning
> January 1, 1948, as heretofore authorized by
> the provisions of Section 17, of Article VII,
> of this Constitution as adopted August 23,
> 1947."

Thus, it is clear that your basic assumption is a correct one, the only question being, what disposition may be made of such money when received by the institutions?

First, all bonds or notes issued during the first ten-year period must be paid as required by the old and new constitutional provisions and by the contract rights of the holder of the obligations.

Second, the Constitution requires that the tax moneys may be used only to pay the principal and interest on bonds or notes. Attorney General Opinions V-798, V-799(1949). Institutions have previously been cautioned not to issue bonds or notes in excess of the Comptroller of Public Accounts' estimate of available funds since the validity of such instruments necessarily depends upon adequate provision having been made to pay the obligation. City of Athens v. Moody, 115 Tex. 247 (1926), 280 S.W. 514, Owasso Board of Education v. Short, 89 Okla. 2, 213 P. 857(1923). Attorney General Opinion MS-176 (1955).

In Attorney General Opinion MS-176(1955), the distinction was drawn between the right to pledge taxes to the payment of obligations to become due prior to January 1, 1958, and the power to use the funds collected after that date where such funds were obtained from the tax levies for the years 1948-1957 (whether delinquent or current collections) and stated:

> "After payment of notes or bonds issued during the initial period, any surplus thereafter remaining may be used by the respective institutions during the succeeding periods for the purpose originally authorized."

This opinion (MS-176) and Attorney General Opinion V-798 (1949) are, despite the subsequent amendment to the Constitution, controlling as to the use of the funds for the institutions included in both the 1947 and 1956 amendments to Article VII, Section 17, of the Constitution of Texas, but do not control as to Section 18, as amended in 1956.

As to these four institutions, however, you will note that Article VII, Section 18, of the Constitution (as amended in 1956) reads, in part:

> "Any bonds issued hereunder shall be
> payable solely out of the income from
> the Permanent University Fund."

It is, of course, necessary to construe all of the constitutional provisions together in arriving at the intent of the people in adopting such provisions. The Constitution requires that the moneys allocated to these four institutions shall remain in force and effect, yet, have, in effect, prohibited the use of such tax proceeds to pay obligations issued under the provisions of either Article VII, Sections 17 or 18, if all outstanding obligations have been paid. If it had been intended that such moneys could not be expended, then there would have been no necessity to preserve the previous allocation to these four institutions.

You are, therefore, respectfully advised that the tax moneys allocated to these four institutions by the 1947 amendment to Article VII, Section 17, of the Constitution of Texas, may be used for acquiring, constructing and initially equipping buildings or other permanent improvements at such institutions without the issuance of bonds or notes under either Article VII, Sections 17 or 18.

SUMMARY

The Board of Directors of the Agricultural and Mechanical College of Texas and the Board of Regents of the University of Texas, for and on behalf of Prairie View Agricultural and Mechanical College at Prairie View, Tarleton State College at Stephenville, Arlington State College at Arlington, and Texas Western College of the University of Texas at El Paso may not issue bonds or notes under Article VII, Section 17, of the Constitution. Nor may bonds or notes issued under Article VII, Section 18, of the Constitution, be paid from taxes levied during the years 1948-1957 but not collected until after January 1, 1958. Such tax moneys may be used, without the issuance of bonds or notes, for the purpose of acquiring,

constructing, and initially equipping
buildings or other permanent improve-
ments at such institutions.

Very truly yours,

WILL WILSON
Attorney General

By *Elbert M. Morrow*
Assistant

APPROVED:

OPINION COMMITTEE:

H. Grady Chandler, Chairman

Marietta McGregor Payne

R. E. Fletcher

Edwin Horner


REVIEWED FOR THE ATTORNEY GENERAL
BY: Geo. P. Blackburn